

Colin Prince
Chief Appellate Attorney
10 North Post Street, Suite 700
Spokane, Washington 99201
509.624.7606

UNITED STATES DISTRICT COURT
Honorable Salvador Mendoza, Jr.

| | |
|---|---|
| United States,<br><br>                    Plaintiff,<br><br>   v.<br><br>Robert Barbee,<br><br>                    Defendant. | No. 20-cr-6045-SMJ<br><br>Sentencing Memorandum &<br>Motion for Downward Departure |

# TABLE OF CONTENTS

I. Introduction ................................................................................................ 1

II. Base Offense Level & Enhancements .................................................... 1

III. Departures ................................................................................................ 2

IV. Sentencing Reform Act: 18 U.S.C. § 3553(a) ......................................... 2

    A. Mr. Barbee survived a horrific childhood. .................................... 2

    B. Mr. Barbee now. ............................................................................. 4

    C. The Court should impose a total 24-month sentence. .................. 5

V. Conclusion ................................................................................................ 8

## I. Introduction

Robert Barbee has an undeniably serious criminal history, and he knows that he must register. He is a 47-year old, barely literate man with a litany of diagnosed mental-health disorders—PTSD, bi-polar disorder, anxiety, depression. The short story is this: Mr. Barbee has been running away since he was a child—from beatings at the hands of his adopted parents when he was 12-years old, to fears that he is in trouble with police now. In the summer of 2019, Mr. Barbee says police questioned him (about an offense that the defense has found no record of), he got "spooked," was afraid he was in trouble, and packed his bags and fled to California, failing to register along the way. There is no justification for that flight, but the offense must be placed in perspective.

Mr. Barbee has already served about a year and a half, most of that time in fiercely difficult lockdown conditions through the pandemic. He respectfully requests a total sentence of 24-months resolving both the indictment and related supervision violations.

## II. Base Offense Level & Enhancements

The PSR's calculations are correct: the base offense level is 16, with no enhancements. With a decrease for acceptance of responsibility, the total offense level is 13.

### III. Departures

Given his childhood history of trauma and abuse (as outlined in more detail below), Mr. Barbee respectfully moves for a departure under U.S.S.G. § 5H1.3. As the Ninth Circuit has acknowledged, the "psychological effects of child abuse manifest themselves" in many ways—"profound feelings of inadequacy, isolation, confusion, low self-esteem, and guilt." *U.S. v. Roe*, 976 F.2d 1216, 1218 (9th Cir. 1992). In *Roe*, the Ninth Circuit highlighted that the defendant "lacked any semblance of a stable family environment," it was "doubtful she received any meaningful guidance from her drug-addicted mother or her mother's abusive boyfriend." *Id.* at 1218. Mr. Barbee's childhood falls into that category. And in extraordinary cases of childhood abuse and neglect like this, courts should consider an "abusive upbringing" in calculating the guideline range. *Id.* at 1218 (reversing and finding district court clearly erred in holding "tragic circumstances" of defendant's childhood were not extraordinary).

The Court should depart down by three levels, leaving a total adjusted offense level of 10, with a guideline range of 21–27 months.

### IV. Sentencing Reform Act: 18 U.S.C. § 3553(a)

**A.    Mr. Barbee survived a horrific childhood.**

Mr. Barbee was born to drug-addicted parents, Jim and Cathy Smith. (His birth name is Miland.) He was taken by the state when just a few years old and placed into

foster care. Mr. Barbee saw his parents a few times in CPS-controlled meetings as a toddler, but he has only vague memories of them.

When asked about foster care, he replied that it was "pretty shitty." He bounced between 10 and 15 homes in just four years, between ages 4 and 8. He didn't attend school until he was adopted at 8-years old and was placed immediately into special-education classes.

Mr. Barbee's situation did not improve. His new parents beat him near daily— Mr. Barbee reported that he was whipped for being late, lying, and other small infractions, generally with a belt or wooden board. He once kicked a school-bus tire for no particular reason, and his father, having seen the kick, forced Mr. Barbee to remove his shoes and kick a wooden table until he couldn't bear the pain. On three occasions, Mr. Barbee says his father punched him in the face until his head split open bleeding— he still has the scars on his brow. His adopted mother was no better. Mr. Barbee says that although less strong, she hit him more often than his father.

So he ran. He describes running as "his thing." He has always done it. Growing up in rural California, he ran to San Francisco. He ran to Sacramento. He slept in parks and lived on the streets as a 12 and 13-year old.

At 13-years old, his adopted parents quit. Mr. Barbee was placed into the California Youth Authority (what is essentially juvenile detention), living in dormitories with other teenagers. He remembers an attempted rape by an older 16- or

17-year old not long after he arrived. Oddly, he still maintains some contact with his adopted parents.

There were no means to help Mr. Barbee with schooling. Instead, the system abandoned him; the Youth Authority gave him a job cleaning up trash around the facility and later driving a guard around in a golf cart.

That was his childhood—neglect, abandonment, beatings.

**B.    Mr. Barbee now.**

Mr. Barbee has significant mental-health and intellectual obstacles. He cannot read well enough to review the PSR. (Counsel read him the document in its entirety.) He takes numerous medications for anxiety, schizophrenia, bi-polar disorder, PTSD, and depression.[1] Mr. Barbee could not, in speaking with counsel, remember all the medications he takes.

He summarizes his own mental health like this: "I get spooked." He gets nervous, anxious that something bad is going to happen, and he does the same thing he has since childhood—he runs away. Mr. Barbee says that he had no particular plan in leaving for California, before being arrested on this offense. He says that Benton County officers questioned him regarding some crime that he had nothing to do with, but he got spooked nonetheless. He quickly packed his bags and fled to California. (Mr.

---

[1] *See* PSR ¶ 105 (detailing mental health diagnoses).

Barbee was never charged with anything, and the defense was unable to locate any records of a case relating to him or even allegations made against him. To date, we are unsure if there was a crime at all, or if Mr. Barbee simply misunderstood why he was questioned.)

Now, Mr. Barbee seeks essentially a mental-health hospital. In preparing for sentencing, defense counsel asked Mr. Barbee what he wanted. He requested some kind of residential mental-health placement. Not a short-term placement. He asked for the type of long-term residential mental-health hospital that the United States did away with in the 1970s.[2] But the criminal system offers nothing like the kind of structured placement Mr. Barbee wants.

He has applied for social-security benefits, and intends to use those funds to locate some kind of stable housing.

### C. The Court should impose a total 24-month sentence.

A 24-month sentence for failing to register is a reasonable sentence for at least three reasons:

***First***, Mr. Barbee has been held in county jails since November 2019, and that was not regular jail time—it was pandemic jail time in near constant lockdown for over a year. In considering the severity of that time, the Court would be on solid footing—

---

[2] *See* Samantha Raphelson, *How the Loss of U.S. Psychiatric Hospitals Led to a Mental Health Crisi*, Nat'l Pub. Radio (Nov. 30, 2017) (available at: https://n.pr/36EB3Tv).

judges have long considered the particular harshness a person faces in custody when determining sentences. Judge Quackenbush commonly considered the harshness of lengthy time spent in the Spokane County jail when fashioning a sentence: "at minimum, someone should receive double credit for time spent in local lockups," he said. *United States v. Leland*, No. 2:15-cr-31-JLQ, ECF No. 195 at 4:4-6 (E.D. Wa. 2015). Harshness is a factor that the Seventh Circuit has specifically authorized a sentencing judge to consider: "the harsher the conditions the shorter sentence should be." *U.S. v. Spano*, 476 F.3d 476, 479 (7th Cir. 2007) (noting merit to argument and that sentencing judge may take it into account, but not mandating it be factored given that it "would complicate sentencing enormously to require" sentences to vary with harshness). And harshness is regularly considered in sentence-reduction motions. *See, e.g., U.S. v. Armstrong*, 2020 WL 4366015, at *4 (S.D. Cal. July 30, 2020) (granting sentence reduction in part because "defendants committing similar offenses now, in the time of COVID-19, are receiving vastly lower sentencing recommendations, because their time in custody is harsher") (emphasis added); *see also U.S. v. Noriega*, 40 F. Supp. 2d 1378, 1379 (S.D. Fla. 1999) (reducing sentencing and in part due to security-based "isolation," finding that "the consequences of such deprivation can be serious," and "I suppose we would find that [defendant] has in fact done more time than the nine years which have passed"); *U.S. v. Macfarlane*, 438 F. Supp. 3d 125, 127 (D. Mass. 2020) (a defendant's "two-week confinement in solitary quarantine in a

higher security facility is the equivalent of two months in the Camp to which he was originally assigned").

Mr. Barbee has already served a sentence that is harsher than the numbers show.

***Second***, even absent the harshness, Mr. Barbee is asking for a sentence that falls in the middle of his post-departure guideline (i.e., 21–27 months after a departure under U.S.S.G. § 5H1.3). That sentence reflects the seriousness of the offense, but also recognizes that the offense itself is relatively mundane—Mr. Barbee simply got scared and ran away. He did not commit serious offenses while failing to register. A two-year sentence is not so harsh that it causes disrespect for the criminal system in the community, which generally considers federal sentences too harsh. *See* Hon. James S. Gwin, *Juror Sentiment on Just Punishment: Do the Federal Sentencing Guidelines Reflect Community Values?*, 4 Harv. L. & Pol'y Rev. 173, 195 (2010) ("The Guidelines and congressionally directed ranges are ***significantly*** harsher than community sentiment recommends.").

***Third***, the defense is not recommending a lenient sentence. Mr. Barbee still faces years of supervision after he finishes the sentence—a significant penalty. While under supervision, Mr. Barbee would "not enjoy the absolute liberty to which every citizen is entitled," and terms of release are no "act of leniency" but a "substantial restriction of freedom" in which he would "always face the harsh consequences that

await if he violates." See *Gall v. U.S.*, 552 U.S. 38, 44, 48 (2007) (quoting in part with approval a district court opinion).

Mr. Barbee must comply with his registration requirements, and he failed to do so. A 24-month sentence punishes the offense, but more time serves none of the goals of sentencing.

## V. Conclusion

For the reasons above, Mr. Barbee requests a sentence of 24-months.

Dated: July 15, 2021.

Federal Defenders of Eastern Washington & Idaho
Attorneys for Robert Barbee

s/Colin G. Prince
Colin G. Prince, WSBA No. 43166
10 North Post Street, Suite 700
Spokane, Washington 99201
t: (509) 624-7606
f: (509) 747-3539
Colin_Prince@fd.org

SERVICE CERTIFICATE

I certify that on July 15, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will notify Assistant United States Attorneys: Ann Wick.

s/Colin G. Prince
Colin G. Prince, WSBA No. 43166
10 North Post Street, Suite 700
Spokane, Washington 99201
t: (509) 624-7606
f: (509) 747-3539
Colin_Prince@fd.org
